AMBLETON V. DYER.

Decided May 3, 1890.

1. *Administrator's account—Action to surcharge and falsify—Presumption.*

In an action to surcharge and falsify an administrator's account, where he obtains credit for dower from rents paid to the widow and charges himself with rents in amount less than three times what was paid her, in the absence of proof as to what rents were collected, it will be presumed that they amounted to three times what was paid as dower.

2. *Improperly keeping administration open—Disallowance of costs.*

In such action where the administrator improperly kept the administration open by concealing that he had money enough to pay all debts, and procured a sale of lands of the estate for that purpose, all allowances of costs against the estate thereby subsequently incurred, including commissions, will be stricken from his account.

3. *Guardian's sale—Payment.*

Where a guardian who is insolvent sells the land of his wards and accepts her own paper in payment, the purchaser will be liable for the amount of his bid. [Compare *Smith v. James, ante*, p. 135.—REP.]

4. *Unapproved guardian's sale—Rents and profits.*

> The purchaser who acquires possession of land under a guardian's sale, which is never approved by the probate court, will be liable for rents and profits.

APPEAL from *Yell* Circuit Court in Chancery, Danville District.

G. S. CUNNINGHAM, Judge.

*W. D. Jacoway* for appellants.

The defendant had the exclusive management and control of the estate, and manipulated it to suit his own personal interests. He filed no inventory. He failed to charge himself with assets that came to his hands; he has taken double credits, and credits to which he was not entitled. At the time he filed his first settlement he had assets enough to more than pay all the debts, and the estate should then have been wound up, and all the costs, expenses and commissions incurred since should be disallowed.

The administrator has no interest in the lands and no control over them save to pay debts. 27 Ark., 235; 33 Ark., 665; 39 Ark., 158. Orders of the probate court not authorized by statute are void. 33 Ark., 425; Freem., Void Jud. Sales, secs. 10, 11.

He was indebted to the estate, and had assets *more than* sufficient to pay the debts, when he asked an order for the sale of the lands. He failed to make oath as required by Mansfield's Digest, secs. 173 to 180. He perpetrated a fraud on the probate court, and forced a sale of the lands at a sacrifice. He fraudulently obtained credit for taxes paid by Mrs. Ambleton. He paid debts to parties who owed the estate. He claimed credits for taxes paid *after the lands* were sold. He failed to charge himself with the purchase money paid for the Fourche tract. The receipt for $436.59 was obtained by fraud, and he never paid Mrs. Ambleton a dollar of it. He nowhere charges himself with the $108.00 worth of pro-

perty turned over to the widow, but he takes credit for it with interest and commissions, etc.

The defendant absorbed the personal estate; then by deceit, misrepresentation and concealment of facts and frauds perpetrated upon the probate court, combined with his strange and unnatural powers and overreaching influence over the widow, he unnecessarily procured the sale of all the real estate under the forms of laws, manipulated the sales, bought the lands and town lots, and, regardless of fiduciary relations and obligations, became the owner of an estate worth over $3,000.00, without investing a dollar. 34 Ark., 117; 33 Ark., 733; 33 Ark., 425; 39 Ark., 114; 34 Ark., 63; 20 Ark., 526; 23 Ark., 444; 42 Ark., 491; 26 Ark., 445.

He is liable for what he sold the land for with interest at the highest legal rate. Bisp., Eq. (3d ed.), sec. 239, p. 300; Bisp., Eq. (3d ed.), sec. 237, p. 298; 38 Ark., 494.

The sale of the "Mountain tract" was not confirmed, and no title passed to the purchaser. 38 Ark., 78; 32 Ark., 97; 32 Ark., 321, 391. See also Perry on Trusts, vol. 1 (3d ed.), par. 217-225, as to purchasers from trustees. A trustee deriving undue advantage from his position must answer out of his own means, so far as he had or might have had assets of the deceased. Schouler, Ex'rs and Adm'rs, 383 *et seq.*; Schouler, Dom. Rel. (3d ed.), 349 *et seq.*

A purchaser will not be protected if he had notice that the trustee intended to misapply the purchase money. Perry, Trusts (3d ed.), vol. 2, par. 800, note 5; Perry, Trusts (3d ed.), vol. 3, par. 810 and notes. He must see that the trustee makes the application of the purchase money, etc. 46 Ark., 109; 26 Ark., 445; 41 Ark., 264.

Defendant is not entitled to compensation. 23 Ark., 47.

The cross-complaint was a separate and distinct suit against Mrs. Ambleton in her *individual* capacity. 30 Ark., 268. It should have been dismissed.

*H. S. Carter* and *Robert Toomer* for appellee.

Review the testimony in detail, and contend that no fraud is proven. Only one error is shown, the failure to charge the $30.00 purchase money of the Fourche tract, which was a mistake, and the money is properly accounted for.

There is nothing in the record to vitiate the sale of the town lot. It was bought by Perry, and purchased from him long afterwards. 33 Ark., 575.

Restate the accounts and show that they are fair. That Mrs. Ambleton collected and consumed the larger part of the estate for the support of herself and children. That Dyer paid the debts out of his own means. The receipt of Mrs. Ambleton was for what Mrs. Ambleton owed the estate on a settlement had with her.

No fraud has been proven to have been perpetrated on the court or any one else to justify the opening of the settlement. 50 Ark., 217; 34 Ark., 63.

If the minors be decreed a half interest in the Mountain tract, the credit obtained on the mortgage should be cancelled, and the mortgage should be foreclosed.

Dyer paid for the Petit Jean tract as follows: He surrendered to Mrs. Ambleton a note for $78.00, and credited her mortgage note with $20.00 and paid her the balance in money. If the minors are allowed to recover this amount, he should have a decree against Mrs. Ambleton with interest.

HEMINGWAY, J. This cause comes before us upon appeal from the Yell circuit court in chancery. As presented, it involves three distinct controversies between the different parties to the suit.

The suit was commenced by the heirs at law of A. Ambleton against A. J. Dyer, as administrator of his estate, to set aside his final settlement in the probate court and to surcharge and falsify his accounts; also to recover the value of

a tract of land bought by Dyer at a sale made by M. A. Ambleton, as guardian of the plaintiffs who were then minors, under the order of the probate court, and also to recover the interests of two of the minors in another tract of land which had been struck off to Dyer at a sale by their guardian, but the sale of which had never been confirmed by the court, and to recover rents for the last mentioned tract.

After the cause had been submitted, Dyer filed what he called a cross-complaint, making M. A. Ambleton a defendant, the object of which was to foreclose a mortgage executed by her on her own land as security for a debt to Dyer. She appeared, answered and went to trial on the merits of the case against her.

The evidence is voluminous, unsatisfactory in many respects and confused; a discussion of it would be profitless. We content ourselves by stating what we find to be the facts, in so far as it is necessary to establish the rights of the parties. A. Ambleton, a citizen of Yell county, died intestate on the 27th day of July, 1872, the owner of real and personal property, leaving him surviving his widow, M. A. Ambleton, and four children, Maletie, since intermarried with Daniel Dacus, Mary J., John B. and George, all then of tender years. The defendant Dyer was the family physician of the deceased, and attended him in his last illness. On the 7th of October, 1872, he and the widow obtained letters of administration upon the estate in the Yell probate court, and duly qualified. The lands of the estate comprised a store-house in Dardanelle, a tract of forty acres known as the Fourche tract, one of one hundred and twenty acres known as the Petit Jean tract and another of two hundred acres known as the Mountain Place. The personalty comprised farm animals and implements, household effects and choses in action. On the 31st day of October, 1872, all the personal effects were sold, except choses in action, a few articles afterwards found and live stock of the value of

$108.00 taken by the widow. The amount of the sale aggregated $549.72, of which the widow purchased $343.67 in value.

Some time in 1874 the administrators filed their first account current. It showed that there had been allowed against the estate claims aggregating $272.12, of which $116.00 was due Dyer. They charged themselves. with personalty aggregating $934.19, and claimed credit for disbursements by $684.14, leaving a balance due from them of $250.05. Credits were claimed on account of dower turned over to the widow for $68.20 in money, $343.67, being the amount of her purchases at the sale, and $101.80 as a part of her share of the rents collected. It contained a charge for the rents collected of $229.83, and the voucher for the credit of $101.80 asked disclosed that it was paid to the widow as above recited. As the widow was entitled to only one-third of the rents, it is obvious that the amount charged was too small. How much rent had been collected is not made clear by the proof, but it must have been at least three times as much as was paid to the widow on that account. As the amount charged is $75.57 less than three times the amount paid the widow, that sum should be added to the cash charged in the account. The administrators did not charge themselves with the $108.00 worth of personality delivered to the widow, nor take credit for it in that settlement. It should have been charged there, and, if legally turned over to her, a corresponding credit should have been. taken. In view of the extent of the estate, it may be doubted whether she was entitled to it, but she received it and used it for the benefit of plaintiffs, and they are not in an attitude to complain of its disposition. It should have been charged and, we think, also credited; if it had been done, the subsequent improper credit with no counter charge could not have been made. The account was approved as rendered; correcting it in the manner above indicated, it would have shown a balance in the

1. Administrator's account—Presumption as to amount of rents collected.

hands of the administrators of $325.62—more than sufficient to have paid off all claims ever allowed.

On the 15th day of January, 1875, a second account current was presented which was subsequently approved; it contained no error except that brought down from the first.

On the 27th day of March, 1875, the administrators presented to the probate court an application to sell the Fourche and Petit Jean tracts to pay debts, showing the amount of claims unpaid, $192.14, and the amount of personal assets in their hands; $209.91, which did not include the sum of $75.57 which, as we have stated, was improperly omitted from the debits of the first account. The petition alleged that most of the assets were notes; but the administrators only charged themselves with three notes aggregating $106.12, and Dyer admits that he collected the largest of them. He had received for rents $203.60, for one note $43.00, and for goods sold Gray $60.00, aggregating $306.60 and not including what they had paid the widow. That he had collected other sums, is established, and it is therefore evident that he had in his hands enough personalty to pay all claims against the estate, when the petition to sell was presented. But the order of sale was made. On the 9th day of November, 1875, the lands were offered for sale, and Daniel Dacus purchased the Fourche tract for $30.00, but the Petit Jean tract was not sold, no one offering the requisite part of its appraised value. On the 12th of April, 1876, the administrators made report as above, and asked for an order to sell the Dardanelle store to pay the balance of the debts. An order of sale was accordingly granted.

On the 9th day of October, 1876, the administrators reported that they had sold the store on the 6th of June, 1876, to James K. Perry for $400.00, and the sale was confirmed. Perry never paid for it, but a deed was made to him, and he conveyed to Dyer. Dyer subsequently sold it for $475.00.

On the 13th of January, 1876, a third account current

was filed.   It was infected with the vice of the first, and took
a credit for costs in procuring a sale of the lands, which were
not a proper charge against the estate for the reason here-
after explained.   It showed a balance in the hands of the
administrators of $255.78.   At that time the Fourche tract
had been sold for $30.00, of which no charge was made, and,
if added to the amount omitted from the first account, would
swell the balance in this account to $331.35, without deduct-
ing the charge of $7.00.   It was approved.

On the 13th day of July, 1877, the administrators filed
their fourth annual account, charging themselves with
$696.99 and crediting themselves by $182.48, showing a
balance against them of $514.58.

On the 10th of July, 1878, they filed their fifth and final
account, wherein they charged themselves with the sum of
$560.26 and asked credit by the sum of $621.30, which was
approved October 16, 1878.   Among the credits is the sum
of $436.59 paid Mrs. Ambleton as guardian and ten dollars
interest thereon.   They paid Mrs. Ambleton no money; Dyer
had advanced to her at various times from October, 1872, to
February, 1877, moneys and supplies amounting to $140.35,
and had other claims against her.   She receipted him as
guardian for $436.59 upon his satisfying the account and
some other claims, the $108.00 worth of personalty turned
over to her being charged against the estate here.   The ar-
ticles embraced in the account seem to have been used for
the support of Mrs. Ambleton and the plaintiffs; the other
claims do not appear to have been incurred for the benefit of
the plaintiffs.   He included in the account an item of $5.00
for leather taken by her at the sale at its appraised value,
but it seems to have been credited in the first settlement.
So the two items above should be stricken out, and a credit
entered for $140.35.

In obtaining improper credits and omitting proper charges
the administrators perpetrated a fraud on the court and these

plaintiffs, that entitles them to have the settlement set aside and the account restated.

2. Improperly keeping adminis- tration open— Disallowance of costs.

There was no reason to continue the administration open after the 27th of March, 1875, for the accounts show that there was enough in the hands of Dyer on the 15th of January preceding to settle all claims against the estate. All costs of administration after that time, including commissions, were unnecessarily incurred, and should be stricken from the account. There was no necessity to sell the real estate to pay debts, and no costs incident thereto should be allowed. As the sale of the Dardanelle property was unnecessary and procured by the fraudulent representations of the administrators, Dyer should be charged with the amount he realized for it, $475.00, as of the 16th of January, 1877. They failed to charge themselves with $30.00, the purchase price of the Fourche tract, and this should be done as of the 9th of November, 1875. No allowance should be made for payment of taxes on either tract after its sale.

Dyer seems to have assumed almost the exclusive management of the estate; although Mrs. Ambleton joined in presenting accounts and in applications to sell land, the proof shows that Dyer prepared the papers, or had it done, and she signed them, and that he made all affidavits that were made, but she paid taxes on the land amounting to $56.00, for which they obtained credit in the first settlement, and she collected of debts due the estate different amounts.

The sum so collected was used in paying the taxes above, and in repairing and improving the lands of the estate, and thereby went for the benefit of plaintiffs. As Dyer will be charged with all of it, and has been credited only by the taxes, we think he should now receive an additional credit of the difference between what she collected and the amount already credited as above.

When a correct statement of the account is made, each of

the children of the intestate will be entitled to a judgment against Dyer for one-fourth of the sum shown due.

While the administration was pending, Mrs. Ambleton procured letters of guardianship of the minor plaintiffs, Mary, John B. and George. She was insolvent and gave bond with insolvent sureties, as it is alleged. She obtained an order, and on the 6th day of December, 1879, sold the interest of her wards in Petit Jean to Dyer for $150.00, due twelve months after date. She executed a deed to Dyer, but received no money in payment, assuming to collect the sum bid in her individual paper. That she could not do. Dyer has sold the lands to a third party, and plaintiffs last named ask a personal judgment against him for the sum bid by him. As he never paid for the land, they are entitled to collect the price bid, that is $150.00—$50.00 each—with interest from December 6, 1880.

3. Guardian's sale—Payment in paper of guardian.

Subsequently Mrs. Ambleton, as guardian of John B. and George (Mary having attained her majority), procured an order to sell their interest in the Mountain farm, and accordingly on the 18th of August, 1883, sold it to Dyer who was placed in possession; the purchase money was never paid and the sale was never approved by the court. But he acquired possession, and the minors ask possession of their half interest in the land and the rents and profits. They are entitled to judgment for their interest in the land and also for rents from January 1, 1884; the proof shows that the rental value of the land was sixty dollars per annum, and the plaintiffs John B. and George, being each the owner of one-fourth of the land, are each entitled to rents at the rate of $15.00 per annum, to be computed annually on the 1st of January of each year, the first installment becoming due January 1, 1885, and each installment to bear interest at the rate of six per cent per annum after maturity.

4. Unapproved guardian's sale— Purchaser liable for rents and profits.

It is manifest that the claim against Dyer for lands sold by the guardian had no connection with the claim against

him as administrator, and that the guardian should have brought the suit; but the parties went into a trial upon both matters, and we have therefore considered them as presented.

The issues raised on Dyer's cross-bill were entirely foreign to the controversy as it then stood. The plaintiffs moved to strike it out; under the rules of good practice and orderly procedure, the motion should have been sustained. But the only prejudice it could have caused the plaintiffs was delay, and against that we are powerless to protect them at this time. When Mrs. Ambleton, the defendant in the cross-bill, was brought in, she proceeded to a trial on the merits, and we will so dispose of it on appeal.

Dyer is entitled in that branch of the case to a judgment against Mrs. Ambleton for the amount of her note dated May 15, 1883, less the amount which the proof shows was paid thereon in the sale of the interests of the adult owners of the Mountain farm, and to a foreclosure of the mortgage.

The judgment will be reversed, and the cause remanded with directions as follows:   1st.  To restate the account of Dyer as administrator upon the facts herein found and according to the principles herein stated.  2d.  To fix the amount due Dyer upon the mortgage of Mrs. Ambleton. 3d.  To render several judgments in favor of the different parties according to their respective rights.  4th.  If the claim allowed in Dyer's favor against the estate was not paid, he should have a credit for it in his account.  The circuit court will make its finding as to that, and if necessary may receive further proof.  He should have no allowance for any expense growing out of the administration after the 24th day of April, 1875, and all such items in his account with the probate court should be stricken out; the court may hear further proof if necessary to determine what credits were allowed for such expense.

The findings that we have made will be taken as final; but if, in stating the account or in making calculations, it

shall become essential to ascertain facts upon which we have made no finding, it may be done. We open the proof upon the two points above indicated because they are material, escaped the attention of the court and counsel at the hearing below, and the evidence taken does not satisfactorily disclose the rights of the parties in respect thereof.