ROBINSON et al. v. LONG GAS CO. et al.

(Circuit Court of Appeals, Eighth Circuit. February 12, 1915.)

No. 4209.

1. INDIANS ⊜⟿16—LEASE BY GUARDIAN—APPROVAL.

Under Act March 3, 1905, c. 1479, 33 Stat. 1060, providing that no lease of allotted lands in the Indian Territory made by any guardian shall be valid without the approval of the court having jurisdiction of the proceedings, a lease of the oil and gas rights in such lands, made by a guardian and approved by the Secretary of the Interior under the provisions of Act July 1, 1902, c. 1375, § 72, 32 Stat. 726, but not by any court, is void.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 45; Dec. Dig. ⊜⟿16.]

2. STATUTES ⊜⟿226—CONSTRUCTION—ADOPTION OF CONSTRUED STATUTE.

Under Act May 2, 1890, c. 182, § 31, 26 Stat. 94, which adopted for the Indian Territory the laws of Arkansas relating to the estates of minors, the construction theretofore placed on those laws by the Supreme Court of Arkansas, that a lease by a guardian was void unless approved by the court, was also adopted.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 307; Dec. Dig. ⊜⟿226.]

3. COURTS ⊜⟿42—STATUTES—AMENDMENT—IMPLIED AMENDMENT.

Under Act May 2, 1890, c. 182, § 31, 26 Stat. 94, which adopted certain laws of Arkansas for the Indian Territory, and provided that wherever the word "county" was used in the Arkansas laws a judicial division of the Indian Territory should be substituted, and Act March 1, 1895, c. 145, 28 Stat. 693, which abolished the judicial divisions of the Indian Territory, established judicial districts, and vested in the district courts the same territorial jurisdiction, which the divisions had theretofore, the words "judicial district" are now to be read into the Arkansas statutes for the word "county," instead of the words "judicial division."

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 163–170, 181–183; Dec. Dig. ⊜⟿42.]

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Suit to quiet title by C. O. Robinson and another against the Long Gas Company and another. Decree for the defendants on demurrer to the bill, and plaintiffs appeal. Reversed, with directions to overrule the demurrer, with leave to defendants to plead further.

The appellants instituted this action to quiet title to certain real property in Washington county, Okl. The material allegations in the bill, so far as they are necessary to be set forth for the determination of the issues in this cause, are that the land in controversy had been allotted to one Roscoe Parris, a citizen by blood of the Cherokee Nation or Tribe of Indians, and that a patent therefor was duly issued to him in 1906; that the allottee was an infant, six years of age at the time the patent was issued to him; that on October 10, 1907, one William Parris was duly appointed as his guardian by the United States Court for the Western District of the Indian Territory; that the lands, at that time, were within the jurisdiction of the United States Court for the Northern District of the Indian Territory, and are now in the Eastern district of the State of Oklahoma; that on the day of his appointment the guardian executed and delivered a certain oil and gas mining lease to the appellee, the Long Gas Company, a copy of which lease is made a part of the bill the same as if set out verbatim; that said lease shows that it was approved by the

⊜⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Secretary of the Interior, but was never approved by any court whatsover; that under the laws of the Indian Territory in force at that time, as enacted by Congress, sales of leases by guardians of the estates of minors were not subject to the approval of the Secretary of the Interior, but under the exclusive control and jurisdiction of the local and proper courts having jurisdiction of said lands, to wit, the United States Court for the Northern District of the Indian Territory, but that the said lease was not authorized, confirmed, or approved by said court; that the Long Gas Company did not enter upon said lands under the terms of said lease until about February 21, 1911; that on the 10th day of October, 1908, the said infant, Roscoe Parris, died unmarried, intestate, and without issue, and left surviving him, as his only heirs at law, his father and mother, who, on the 2d day of November, 1908, being then the owners in fee of said lands in controversy, conveyed the same, with covenants of warranty and for a valuable consideration, to the plaintiffs, who thereupon entered upon the possession of said lands under said deed of conveyance, and have ever since continued in the possession thereof; that on February 21, 1911, the defendant the Long Gas Company assigned its lease from William Parris, guardian as aforesaid, to its codefendant, the Galer Gas Company; that on the 11th day of August, 1911, the Galer Gas Company, without the consent of the plaintiffs, or either of them, wrongfully entered upon said lands and commenced operations thereon, and to drill and explore the same for oil and gas mining purposes, completing the same on the 26th day of September, 1911, and have ever since produced from said well gas in large and profitable quantities; that plaintiffs do not know the exact extent to which the gas is now produced or has been produced by the defendant, but they believe it to be about 8,000,000 cubic feet daily; that the value of the gas is about $25 per million cubic feet, which, at the present rate of production, amounts to about $200 per day; that at the rate at which the defendant is now extracting gas underlying said lands the value of the lands has been greatly depleted and wasted, and if permitted to continue their operations the mineral value of the lands will be toally destroyed; that the value of the right to extract oil and gas from said lands is of great value, exceeding the sum of $30,000; that on the 4th day of January, 1912, plaintiffs notified the defendants in writing to quit and deliver up the premises to them, which they have declined to do.

The prayer of the bill is that it be decreed that the defendants have no interest or estate, right, or title whatsoever in and to said lands, or to the mining right thereon; that the lease be canceled; that plaintiffs' title be declared good and valid, and that the defendants be enjoined and restrained from asserting any claim whatsoever in and to said lands; that the defendants account to plaintiffs for the value of all gas produced, removed, and sold; and that pending the determination of the cause a receiver be appointed. The bill was filed on April 19, 1912. To this bill of complaint the defendant demurred, upon the ground that it is multifarious and that it is wholly without equity. The demurrer was sustained upon the last-mentioned ground. A final judgment having been rendered in favor of the defendants, the plaintiffs have appealed to this court.

H. B. Martin and A. F. Moss, both of Tulsa, Okl., for appellants.

John H. Brennan, of Bartlesville, Okl., Altes H. Campbell, and John F. Goshorn, both of Iola, Kan., J. Wood Glass and Charles I. Weaver, both of Nowata, Okl., and A. C. Malloy, of Hutchinson, Kan., for appellees.

Before SANBORN and SMITH Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge (after stating the facts as above). Section 30 of the act of Congress of May 2, 1890 (26 Stat. 94, c. 182), divided the Indian Territory into three judicial divisions, there being only one district for the entire territory. Section 31 of that act adopt-

ed for the territory certain laws of the state of Arkansas, digested in Mansfield's Digest, and among them those in relation to the administration of the estates of deceased persons and minors, and also provided that the courts of the Indian Territory should possess the powers of courts of probate under the laws of the state of Arkansas as they appear in Mansfield's Digest. Section 32 further provides:

"The word 'county,' as used in any of the laws of Arkansas which are put in force in the Indian Territory by the provisions of this act, shall be construed to embrace the territory within the limits of a judicial division in said Indian Territory; and whenever in said laws of Arkansas the word 'county' is used, the words 'judicial division' may be substituted therefor, in said Indian Territory, for the purposes of this act."

Section 2 of the act of April 28, 1904 (33 Stat. 573, c. 1824), provides that:

"All the laws of Arkansas heretofore put in force in the Indian Territory are hereby continued and extended in their operation, so as to embrace all persons and estates in said territory, whether Indian, freedmen, or otherwise, and full and complete jurisdiction is hereby conferred upon the district courts in said territory in the settlements of all estates of decedents, the guardianships of minors and incompetents, whether Indians, freedmen or otherwise."

The act of March 1, 1895, established three districts for the territory, abolished the divisions which were created by the act of May 2, 1890, and vested in the district courts the same territorial jurisdiction which the divisions had theretofore. The act of March 3, 1905 (33 Stat. 1060, c. 1479), contains a provision that:

"No lease made by any administrator, executor, guardian, or curator shall be valid or enforceable without the approval of the court having jurisdiction of the proceedings."

The provisions of Mansfield's Digest applicable to leases and sales of property of minors are as follows:

"Sec. 3502. The probate court shall order the proper education of minors according to their means, and for that purpose may, from time to time, make the necessary appropriations of the money or personal estate of any minor, and when the personal estate shall be insufficient or not applicable to the object, upon application the court may order the lease or sale of real estate, or so much thereof as may be requisite, or that the same be mortgaged for not less than two-thirds of its real value, to raise the funds necessary to complete the education of such minor."

"Sec. 3506. Whenever any guardian or curator shall sell any real estate belonging to his ward under an order of court, he shall report such sale to the court ordering the same in the same manner as executors and administrators are required by law to report sales of real estate made by them for the payment of debts; and such sale, if approved by said court, shall be valid to all intents and purposes. If the court refuse to approve the report, the order of sale shall thereupon be renewed, and the same proceedings shall be had as upon the original order."

"Sec. 3509. When it shall appear that it would be for the benefit of a ward that his real estate, or any part thereof, be sold or leased and the proceeds put on interest, or invested in productive stocks, or in other real estate, his guardian or curator may sell or lease the same accordingly upon obtaining an order for such sale or lease from the court of probate of the county in which such real estate or the greater part thereof shall be situate.

"Sec. 3510. To obtain such order, the guardian or curator shall present to the court a petition setting forth the condition of the estate and the facts and circumstances on which the petition is founded.

"Sec. 3511. If, after a full examination on the oath of creditable and disinterested witnesses, it appears to the court that it would be for the benefit of the ward that the real estate, or any part of it, should be sold or leased, the court may make an appropriate order for such sale or lease, under such regulations and conditions, subject to the provisions of this chapter in relation to the sale of real estate of minors, as the court shall consider suited to the case, first requiring the guardian or curator to enter into good and sufficient bonds to make such leases and conduct such sales with fidelity to the interest of his ward, and faithfully to account for the proceeds of such sales and leases according to law and as the order of the court may require."

[1] Counsel have very ably argued the question whether this lease was made under the provisions of section 3502 or sections 3509 to 3511 of Mansfield's Digest. The conclusions we have reached make it unnecessary to determine that question. The lease filed as a part of the complaint fails to show that it was ever authorized or approved by any court, the only approval indorsed thereon having been made by the Secretary of the Interior. The record shows that the form of the lease used was one which had been prepared under section 72 of the act of July 1, 1902 (32 Stat. 726, c. 1375), which required the approval of leases to be made by the Secretary of the Interior; the provision of the act of March 3, 1905, which declares that "no lease made by a guardian without the approval of the court having jurisdiction shall be valid or enforceable," evidently having been overlooked. That the approval of the Secretary of the Interior was not necessary when the lease is approved by the court has been expressly decided by this court in Morrison v. Burnette, 154 Fed. 617, 83 C. C. A. 391.

[2] In addition to what has been said, it is important to notice that the construction placed upon the sections of Mansfield's Digest, hereinbefore set out, by the Supreme Court of the state of Arkansas before these statutes were adopted for the Indian Territory, had been uniform that a deed or lease by the guardian of a minor, without approval by the probate court having jurisdiction of the subject-matter, is void, and that no title or estate passed until it was confirmed by the court. Guynn v. McCauley, 32 Ark. 97; Reid v. Hart, 45 Ark. 41; Ambleton v. Dyer, 53 Ark. 224, 13 S. W. 926; Alexander v. Hardin, 54 Ark. 480, 16 S. W. 264. All of these cases had been decided by the highest court of the state of Arkansas prior to the adoption of these statutes for the Indian Territory. The law is well settled that, when a statute of another state is adopted, the presumption is that the construction which had been theretofore placed upon it by the highest judicial tribunal of the original state is adopted with it. Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819; Willis v. Eastern Trust & Bank Co., 169 U. S. 295, 18 Sup. Ct. 347, 42 L. Ed. 752; Henrietta M. & N. Co. v. Gardner, 173 U. S. 123, 19 Sup. Ct. 327, 43 L. Ed. 637; J. M. Robinson & Co. v. Belt, 187 U. S. 41, 23 Sup. Ct. 16, 47 L. Ed. 65; Maki v. Union Pacific Coal Co., 187 Fed. 389, 109 C. C. A. 221; Blaylock v. Muskogee, 117 Fed. 125, 54 C. C. A. 639; Harrill v. Davis, 168 Fed. 187, 94 C. C. A. 47, 22 L. R. A. (N. S.) 1153.

Robinson & Co. v. Belt, supra, was a case which arose in the courts of the Indian Territory and required a construction of one of the laws in Mansfield's Digest. The statute having been construed by the

Supreme Court of Arkansas before its adoption for the Indian Territory, the court held:

"In adopting this law with respect to assignments, the courts of the Indian Territory are also bound to respect the decisions of the Supreme Court of Arkansas interpreting that law. In more than one case we have had occasion to hold that, if a foreign statute be adopted in this country, the decisions of foreign courts in the construction of such statute should be considered as incorporated into it."

In the Blaylock Case, which also arose in the Indian Territory, this court said on that point:

"The more reasonable rule, the rule sustained by the Supreme Court and by the great weight of authority, undoubtedly is that a municipality which is invested with the power and charged with the duty to make and repair its streets and sidewalks is liable to any individual for the injury which he sustains from its negligence in the exercise of this power or in the discharge of this duty. * * * But the Supreme Court of the state of Arkansas had adopted and affirmed the converse of this rule prior to the enactment in the Indian Territory of chapter 29 of Mansfield's Digest of the Laws of Arkansas. * * * The adoption of a statute or a law previously in force in some other jurisdiction is presumed to be the adoption of the interpretation thereof which had been theretofore placed upon it by the judicial tribunal whose duty it was to construe it."

As the record fails to show that the lease to the defendants was ever authorized or approved by any court having probate jurisdiction in the Indian Territory, it is clearly unenforceable and void.

[3] The fact that the divisions of the court as originally provided in the act establishing a United States Court in the Indian Territory were abolished by the Act of March 1, 1895 (28 Stat. 693), and three districts established in lieu of them, made the latter the successors of the former, and the word "division" must be treated as amended to read "district." If, as contended by counsel for appellees, the change from divisions to districts deprived the district courts of all jurisdiction in those matters, then the provision of the act of 1905 requiring the approval of the court exercising probate jurisdiction would be meaningless. As the act of 1905 was enacted after the change from divisions to districts had been made, it clearly shows that the intention of Congress was to invest the district courts with such jurisdiction.

The court below erred in sustaining the demurrer to the complaint, and the cause is reversed, with directions to overrule the demurrer, with leave to the defendants to plead further, if so advised.