# ROBINSON & CO. *v.* BELT.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 46. Argued May 2, 1902.—Decided October 27, 1902.

The question whether a general assignment for the benefit of creditors is rendered invalid by reason of a provision that the " preferred creditors shall accept their dividends in full satisfaction and discharge of their respective claims " is one determinable by the local law of the jurisdiction from which the question arises.

Under the Act of Congress of May 2, 1890, the laws of Arkansas
respecting assignments for the benefit of creditors, as well as the
statute of frauds, are extended and put in force in the Indian
Territory. In adopting these laws the courts of the Indian Ter-
ritory are bound to respect the decisions of the Supreme Court of
Arkansas interpreting them.

Under the laws of Arkansas, thus made applicable to the Indian
Territory, a stipulation for a release in a general assignment,
which is made only as a condition of preference, does not invalidate
the instrument.

Other objections were made in the assignments of error, but as they
did not appear to have been raised in either of the courts below,
it was held that they could not be raised in this court.

While it is the duty of this court to review the action of subordinate
courts, justice to those courts requires that their alleged errors
shall be called directly to their attention, and that their action
shall not be reversed for errors which counsel in this court have
first evolved from the record.

THIS was a writ of error to a judgment of the Circuit Court
of Appeals for the Eighth Circuit affirming a judgment of the
Court of Appeals of the Indian Territory, which latter court
affirmed the judgment of the United States court for the North-
ern District of such Territory, sustaining an interplea by one
King to recover the value of certain property attached and sold
by Robinson & Co., which had been conveyed to King as
assignee by a deed of assignment made by his co-defendant
Belt.

The facts of the case are substantially as follows : One John
C. Belt, a resident of Arkansas, who was engaged in business
in the Indian Territory, on December 29, 1891, made an assign-
ment for the benefit of his creditors to King as assignee.

On the following day " J. M. Robinson & Co.," plaintiffs
in error, brought suit against Belt in the United States court
in that Territory, sued out an attachment and levied upon
the property assigned. Belt failed to plead, and judgment
by default was taken against him, and the attachment sus-
tained.

On May 31, 1892, defendant in error King filed an interplea,

setting out his deed of assignment, and claiming the property as his, by virtue of such deed. After so doing, he entered into a stipulation with other attaching creditors, of whom there were a large number, whereby it was agreed that this interplea should be considered as filed in every suit, and virtually that the result of the interpleader proceedings in the suit of J. M. Robinson & Co. should control all other suits. The property was, after its attachment, sold under order of court, pursuant to statutes governing such proceedings, and at such sale realized the sum of $7900.

A demurrer to the interplea was filed and sustained by the court, from which order King sued out a writ of error from the United States Court of Appeals. He gave no supersedeas bond, however, and the fund was by order of the court distributed *pro rata* to the attaching creditors according to their priorities. The Court of Appeals reversed the judgment on the demurrer, 63 Fed. Rep. 90, and on September 19, 1895, Robinson & Co. filed their answer to the interplea, denying that King was owner by virtue of the deed of assignment, and alleged the same to be fraudulent and void; denied that King filed a complete inventory; denied that certain personal property described in the deed of assignment was the property of the wife of Belt, and admitted that the property described in the deed was seized under the attachment.

The trial on the interplea was had before a jury and resulted in a verdict in favor of the interpleader, which found the attached property to be the property of King as assignee. A judgment was thereupon entered in his favor, which was subsequently affirmed, first, by the Court of Appeals for the Indian Territory, and then by the Circuit Court of Appeals for the Eighth Circuit. 100 Fed. Rep. 718. Whereupon a writ of error was sued out by Robinson & Co. from this court.

*Mr. David Goldsmith* for plaintiffs in error.

No appearance for defendants in error.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

This is a contest between certain attaching creditors of John C. Belt, and one King, his voluntary assignee for the benefit of creditors.

The record is in an unsatisfactory condition. It is impossible to tell whether the plaintiffs are a corporation or a partnership, and if the latter, who constitute the firm, or against what in-- dividuals the judgment of the court was rendered. Although the only right of the plaintiffs to contest the assignment of Belt to King arises from the levy of an attachment upon the as- signed property, neither the writ of attachment nor the return of the marshal of the levy thereunder appears in the record or testimony. Nor does the record contain a copy of the com- plaint in which these proceedings were probably averred. The only pleadings before us are the interplea of King, filed in the action, (which appears to have been brought against Belt alone,) setting up the assignment, and the answer of the plaintiffs thereto, denying the ownership of King and averring the fraud- ulent character of the assignment. But as the interplea of King alleges that on December 31, 1891, and just after he had completed an inventory of the property so assigned, plaintiffs caused a writ of attachment to be levied upon a portion of the property, we may treat this as a sufficient admission of plain- tiffs' title to justify us in passing upon the question of the va- lidity of the assignment upon which the case largely depends.

1. This assignment is attacked by the plaintiffs chiefly upon the ground that it contains a provision that the preferred cred- itors shall accept their dividends "in full satisfaction and dis- charge of their respective claims," "and execute and deliver to said John C. Belt a legal release therefor." This provision has been the subject of discussion in England and in most of the States, and in a large number of cases has been held to avoid the assignment, upon the ground that the debtor has no right to compel his creditors to accept his terms or lose their prefer- ence. In England a clause of a somewhat similar nature was held to be void under the statute of Elizabeth as an attempt to hinder, delay or defeat creditors, *Spencer* v. *Slater*, L. R. 4 Q. B. D. 13, though the applicability of that case to this particular provision admits of some doubt.

The fact that it enables the debtor to extort a settlement by playing upon the fears or apprehensions of his creditors is thought by the courts of many of the States to be sufficient to justify them in setting aside the assignment; and where such provision has been sustained it has usually been in deference to authority rather than upon conviction of its propriety or wisdom. The question was discussed at considerable length by Mr. Justice Story in *Halsey* v. *Whitney*, 4 Mason, 206, 227, and the validity of the clause sustained largely in deference to the case of *King* v. *Watson*, 3 Price, 6, where, as he states, the very exception was taken by counsel and the assignment held good by the Court of Exchequer. *King* v. *Watson*, however, has but a remote bearing, and seems to have been *pro tanto* overruled by the case of *Spencer* v. *Slater*, above cited. Mr. Justice Story finally remarks that if the question were entirely new and many estates had not passed upon the faith of such assignments, the strong inclination of his mind would be against their validity. "As it is," said he, "I yield without reluctance to what seems the tone of authority in favor of them." Somewhat similar doubt is expressed by Mr. Chief Justice Taney in *White* v. *Winn*, a memorandum of which is found in 8 Gill. 499. The question was also incidentally considered by this court in *Security Trust Co.* v. *Dodd*, 173 U. S. 624, 633, but the case went off upon another point.

This court has never directly passed upon the validity of this provision, but wherever it has been called in question it has been treated as determinable by the local law of the State from which the question arose. Thus, in *Brashear* v. *West*, 7 Pet. 608, the clause was upheld solely upon the ground that the courts of Pennsylvania had sustained its validity. The assignment in that case was in trust to pay and discharge the debts due from the assignor, first, to certain preferred creditors, and afterward to creditors generally, provided that no creditor should be entitled to receive a dividend, who should not within ninety days execute a full and complete release of all claims and demands upon the assignor. Mr. Chief Justice Marshall, after summarizing the arguments for and against the validity of this provision, did not commit the court to the expression of

an opinion, but held that " the construction which the courts of that State (Pennsylvania) have put on the Pennsylvania statute of frauds must be received in the courts of the United States," and decided the case upon the authority of *Lippincott* v. *Barker*, 2 Binney, 174, in which this question arose, and was decided after an elaborate argument in favor of the deed. He also remarked that the question had been decided the same way in *Pearpoint* v. *Graham*, 4 Wash. 232. In that case Mr. Justice Washington thought that an assignment in trust for the benefit of such creditors as should release their debts was founded upon a good and valuable consideration, and was valid, the only inquiry being whether it was *bona fide*. The assignment was supported in favor of such of the creditors as executed a release of their demands within sixty days after the date of the instrument, that being the time limit provided for such acceptance. Neither in *Lippincott* v. *Baker* nor in *Pearpoint* v. *Graham* were there any preferred creditors, but the assignments were in trust for all the creditors who should within sixty days in one case and four months in the other execute a release of their demands. In several subsequent cases the rule laid down in *Brashear* v. *West* has been adopted, and the principle fully established that the construction and effect of a state statute, regulating assignments for the benefit of creditors, is one upon which the decisions of the highest courts of the State are a controlling authority in the Federal courts. They are treated as establishing a rule of property applicable within their several jurisdictions. *Sumner* v. *Hicks*, 2 Black, 532; *Jaffray* v. *McGehee*, 107 U. S. 361; *Peters* v. *Bain*, 133 U. S. 670, 686; *Randolph* v. *Quidnick Co.*, 135 U. S. 457; *Chicago Union Bank* v. *Kansas City Bank*, 136 U. S. 223, 235; *South Branch Lumber Co.* v. *Ott*, 142 U. S. 622, 627.

The same rule has been held to be applicable to decisions of state courts construing the statute of frauds. *Allen* v. *Massey*, 17 Wall. 351; *Lloyd* v. *Fulton*, 91 U. S. 479, 485.

Whatever might be our own views with regard to the validity of a release by creditors as a condition of preference under an assignment, the question is one which, upon the authorities

above cited, must be held to be determinable by the state law as interpreted by the Supreme Court of such State.

While the case under consideration arose in the Indian Territory, the law applicable thereto is determined by the laws of Arkansas, which were adopted and extended over the Indian Territory by the act of Congress approved May 2, 1890, 26 Stat. 94, sec. 31, which declares that certain general laws of Arkansas, " which are not locally inapplicable or in conflict with this act or with any law of Congress, relating to the subjects specially mentioned in this section, are hereby extended and put in force in the Indian Territory," among which laws are enumerated assignments for the benefit of creditors and the statute of frauds. In adopting this law with respect to assignments, the courts of the Indian Territory are also bound to respect the decisions of the Supreme Court of Arkansas interpreting that law.

In more than one case we have had occasion to hold that, if a foreign statute be adopted in this country, the decisions of foreign courts in the construction of such statute should be considered as incorporated into it. Thus in *Pennock* v. *Dialogue*, 2 Pet. 1, it was said by Mr. Justice Story (p. 18): " It is doubtless true, as has been suggested at the bar, that where English statutes, such for instance, as the statute of frauds and the statute of limitations, have been adopted into our own legislation, the known and settled construction of those statutes by courts of law has been considered as silently incorporated into the acts, or has been received with all the weight of authority." In speaking of our patent act, which was largely taken from the English statute of monopolies, he says (p. 20): " The words of our statute are not identical with those of the statute of James, but it can scarcely admit of doubt, that they must have been within the contemplation of those by whom it was framed, as well as the construction which had been put upon them by Lord Coke." In *Cathcart* v. *Robinson*, 5 Pet. 264, Mr. Chief Justice Marshall said (p. 280): " By adopting them (British statutes) they become our own as entirely as if they had been enacted by the legislature of the State. The received construction in England at the time they are admitted to operate in

this country, indeed to the time of our separation from the British Empire, may very properly be considered as accompanying the statutes themselves, and forming an integral part of them. But however we may respect subsequent decisions, and certainly they are entitled to great respect, we do not admit their absolute authority." See also *Kirkpatrick* v. *Gibson's Executors*, 2 Brock. 388. The same rule has been applied in the state courts in the construction of statutes adopted from other States. *Commonwealth* v. *Hartnett*, 3 Gray, 450; *Tyler* v. *Tyler*, 19 Illinois, 151; *Bloodgood* v. *Grasey*, 31 Alabama, 575; *Marqueze* v. *Caldwell*, 48 Mississippi, 23; *State* v. *Robey*, 8 Nevada, 312; *The Devonshire*, 8 Sawyer, 209.

As the Arkansas statutes concerning assignments for the benefit of creditors and the statute of frauds were extended and put in force in the Indian Territory by the act of Congress above cited, it becomes material to consider the decisions of the Supreme Court of that State with reference to the validity of the provision of an assignment exacting a release by creditors of all their demands against the assignor as a condition of preference. The subject was first examined in *Clayton* v. *Johnson*, 36 Arkansas, 406, 424, in which an assignment for the benefit of creditors without preferences was held to be valid, notwithstanding a proviso that no creditor provided for should participate in the assets " unless he accepts the same in full of his claim." The question is most elaborately considered in that case, and a distinction taken between a conveyance of the whole and the conveyance of a part only of the debtor's property upon condition of releasing the residue. The latter was thought to be fraudulent and pernicious in its tendencies. In *McReynolds* v. *Dedman*, 47 Arkansas, 347, it was held that, although an assignor might make preferences and exact releases from creditors who assented to the assignment, if he reserved to himself, to the exclusion of non-assenting creditors, the surplus that remained, the deed was fraudulent upon its face. The difficulty with that assignment was that, in case the creditors refused to execute the releases, the residue, instead of being devoted to the payment of the assignor's creditors, was to revert to the assignor himself. This case is wholly consistent with that of *Clayton* v. *Johnson*. In the

subsequent case, however, of *Collier* v. *Davis*, 47 Arkansas, 367, *Clayton* v. *Johnson* was formally overruled, and an assignment which provided that no creditor should participate unless he should accept his share in full satisfaction of his claim, and gave no direction for the application of the surplus after satisfying assenting creditors, was held void upon its face. It may be noted that the personnel of the court had changed since *Clayton* v. *Johnson* was decided. In the subsequent case of *Wolf* v. *Gray*, 53 Arkansas, 75, decided a few weeks before the act of Congress of 1890, notwithstanding the former overruling of *Clayton* v. *Johnson* in *Collier* v. *Davis*, it is said that its authority upon the stipulation for a release was not impaired, except as modified by the cases before cited. It follows, said the court, that "the law is established here, in accord with much authority elsewhere, that a stipulation for a release in a general assignment, which is made only as a condition of preference, does not invalidate the instrument." The assignment in that case preferred one creditor and provided for payment to all other creditors who should execute releases of the residue of their debts. This case was followed by *King* v. *Hargadine-McKittrick Dry Goods Co.*, 60 Arkansas, 1, where the very assignment in question in this case was held to be valid, notwithstanding the provision for a release by creditors as a condition of preference. Without determining the validity of such a provision at common law, we are of opinion that the courts of the Indian Territory did not err in applying the settled construction of the law of Arkansas to the assignment in this case, and in holding the provision for a release of creditors to be valid.

2. Plaintiffs also seek to impeach the assignment upon the ground that there was no evidence of its acceptance by any of the creditors, or their assent thereto; and the position is taken that, while the creditors may be presumed to accept an assignment made for their benefit, such acceptance will not be presumed, where the assignment is subject to the condition that the creditors consent to a release and discharge of their claims against the estate. Error is also charged in the rendition of the judgment against persons who were not parties to

the immediate case, but who had stipulated other cases into this case for a like judgment ; and also in the fact that a personal judgment rendered against the plaintiffs in error for the value of the goods in controversy was not contemplated or allowed by the statute under which the proceedings were had.

It is a sufficient answer to these objections to say that neither of them appears to have been called to the attention of the courts below.   They do not seem to have been raised at the time the judgment was entered.   It does not appear that any assignments of error were filed in the Court of Appeals for the Indian Territory, but the opinion states that plaintiffs relied upon four objections to the assignment as showing upon its face that it was fraudulent in law.   No objection seems to have been raised in that court to the form of the judgment. In the assignments of error in the United States Court of Appeals for the Eighth Circuit no such question is raised and none alluded to in the opinion.   Such objections could not be raised for the first time in this court.   *Insurance Co.* v. *Mordecai*, 22 How. 111, 117 ; *National Bank* v. *Commonwealth*, 9 Wall. 353 ; *Wheeler* v. *Sedgwick*, 94 U. S. 1 ; *Wilson* v. *McNamee*, 102 U. S. 572 ; *Edwards* v. *Elliott*, 21 Wall. 532 ; *Clark* v. *Fredericks*, 105 U. S. 4.

While it is the duty of this court to review the action of subordinate courts, justice to those courts requires that their alleged errors should be called directly to their attention, and that their action should not be reversed upon questions which the astuteness of counsel in this court has evolved from the record.   It is not the province of this court to retry these cases *de novo.*

The judgment of the Court of Appeals is

*Affirmed.*

Mr. Justice Shiras and Mr. Justice White concurred in the result.