### BARTLETT et al. v. DELANEY et al.
### No. 4334.

United States Court of Appeals
First Circuit.
March 23, 1949.

Edward C. Thayer, of Boston, Mass. (E. Barton Chapin, of Boston, Mass., on the brief), for appellants.

Sumner M. Redstone, Sp. Asst. to the Atty. Gen. (Theron L. Caudle, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson and Maurice P. Wolk, Sp. Assts. to the Atty. Gen., and William T. McCarthy, U. S. Atty., and W. Arthur Garrity, Jr., Asst U. S. Atty., both of Boston, Mass., on the brief), for appellees.

Before MAGRUDER, Chief J u d g e, WOODBURY, Circuit Judge, and PETERS, District Judge.

MAGRUDER, Chief Judge.

These three cases, which were tried together below and consolidated in this court, raise the same question of law. They would be decided in favor of the taxpayer-appellants if we adhered to our decision in Leach v. Commissioner, 1 Cir., 1931, 50 F. 2d 371. But the government maintains that the authority of this case has been undermined by subsequent decisions, particularly by Security Flour Mills Co. v. Commissioner, 1944, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725.

The taxpayers have been on a cash receipts and disbursements basis, with the calendar year as their accounting period. In 1937 they received certain shares of preferred stock in Bird & Son, Inc., a Massachusetts corporation, pursuant to a recapitalization of the company. In 1942 the Commissioner asserted that these shares constituted taxable dividends to the recipients, and determined deficiencies in their 1937 income taxes accordingly. These deficiency taxes, with interest thereon, were assessed and collected in 1942, the taxpayers having filed their waivers pursuant to § 272(d) of the Internal Revenue Code, 26 U.S.C.A. § 272(d). In their respective income tax returns for 1942, the taxpayers took deductions from gross income for interest paid by them to the government in that year on the aforesaid 1937 deficiencies.

However, litigation instituted by another stockholder of Bird & Son, Inc., similarly situated, resulted in a decision by this court, rendered June 24, 1942, holding that the said issue of preferred stock by Bird & Son, Inc., in 1937 did not constitute a taxable dividend. Bass v. Commissioner, 1 Cir., 129 F.2d 300.

On the basis of the decision in the Bass case, the taxpayers, later in 1942, filed their claims for refund of the amounts of the aforesaid deficiency taxes, and interest thereon, previously paid by them. The Treasury in 1943 refunded the amounts of deficiency tax and interest thereon claimed, together with interest on the amounts refunded. In their income tax returns for the calendar year 1943, the taxpayers reported as interest income not only the item of interest which the government had paid them on the amounts refunded, but also the item of interest which they had paid on the asserted deficiency tax in 1942, which interest had been refunded to them in 1943 along with the principal amount of the deficiency tax.

Up to this point the taxpayers, in the government's view, properly reported the transactions in their returns for 1942 and 1943. That is, (1) the taxpayers having actually paid in 1942 the item of interest on the asserted deficiency tax under compulsion of the Commissioner's deficiency assessment, such item of interest was a proper and unexpungeable deduction from gross income for the year 1942, even though the taxpayers were then contesting the assessments and had filed refund claims in that year to recover the deficiency payments, Chestnut Securities Co. v. United States, 1945, 62 F.Supp. 574, 104 Ct.Cl. 489; and (2) when such interest was refunded in 1943, it represented gross income to the taxpayers in that year, Rothensies v. Electric Storage Battery Co., 1946, 329 U.S. 296, 298, 67 S.Ct. 271, 91 L.Ed. 296; Freihofer Baking Co. v. Commissioner, 3 Cir., 1945, 151 F.2d 383. It is the contention of the government that the foregoing is a logical consequence of the statutory scheme

of determining income tax liability on an annual accounting basis, rather than in the light of the ultimate net result of a series of transactions or events over a period of years, growing out of or in some way related to an initial transaction in the taxable year.

Meanwhile, on June 9, 1943, Congress had enacted the Current Tax Payment Act of 1943, 57 Stat. 126, for the purpose of advancing income tax payments so that taxpayers would be placed, as nearly as possible, upon a current basis. Section 6 of that Act, 26 U.S.C.A. § 1622 note, provided that in case the tax for the year 1942, determined without regard to this section, was not greater than the tax for the year 1943 (similarly determined), which was so with these taxpayers, the tax liability for 1942 should be discharged as of September 1, 1943, with amounts theretofore paid on the 1942 tax to be credited as payment for the tax for the year 1943, and the tax for 1943 to be increased by 25 per cent of the computed tax for 1942.

After filing their returns for the year 1943, it occurred to the taxpayers, or to their counsel, that in view of the provisions of the Current Tax Payment Act it would be advantageous to minimize their taxable income for 1943 by eliminating from gross income the interest refund received by them in that year, and at the same time correspondingly to increase their computed taxable income for 1942—the year of forgiveness—by eliminating the deduction theretofore taken for interest paid in that year on the asserted tax deficiency.

Accordingly the taxpayers, in September, 1944, filed their claims for refund of the respective amounts of overpayment computed by them to have resulted from the inclusion in gross income, in their returns for 1943, of the interest payments which had been refunded to them in 1943. In making such computation, each of the taxpayers adjusted the 1942 component of his 1943 income tax liability by eliminating the amount which had been deducted in his original return for 1942 for interest paid in that year. The Commissioner having failed to forward the statutory notice of disallowance of the claims within six months, § 3772(a) (2), Int.Rev.Code, 26 U. S.C.A. § 3772(a) (2), the taxpayers commenced the present suits for refund. The District Court entered judgments for the defendants, and the taxpayers appealed.

In Leach v. Commissioner, 1 Cir., 1931, 50 F.2d 371, a cash-basis taxpayer had taken a deduction in her income tax return for the year 1922 on account of payment in that year of a deficiency in estate taxes, and interest thereon. In 1928 the greater part of such deficiency tax, with the proportionate part of the interest that had been paid thereon, was refunded, together with interest on the amount of refund. Thereafter the Commissioner determined a deficiency in the taxpayer's income tax for 1922, asserting that the deduction which the taxpayer had taken for that year should be reduced by the amount of the 1928 refund. The Board of Tax Appeals upheld the Commissioner, 16 B.T.A. 781, and upon petition for review this court affirmed the decision of the Board.

We think Leach v. Commissioner, supra, supports the tax accounting theory urged by the taxpayers in the case at bar, and we shall not undertake to distinguish the Leach case on the ground that there it was the Commissioner, not the taxpayer, who was seeking to relate back a tax refund for the purpose of expunging a deduction which the taxpayer had taken in an earlier year. Cf. Ross v. Commissioner, 1 Cir., 1948, 169 F.2d 483, 492.

For a time, the Board of Tax Appeals expressed its adherence to the rule of Leach v. Commissioner, supra. The cases were elaborately reviewed in The E. B. Elliott Co. v. Commissioner, 1941, 45 B.T.A. 82, at page 91, and the majority opinion concluded: "We think it is clear that, despite some apparent departures from it, the rule to be drawn from our decisions is that all refunds of paid taxes are to be adjusted to the years in which the taxes were paid and deductions claimed, as the best method to reflect income; the only proper departure from the rule of adjustment of the refund in the years of payment is where the statute of limitations or some other consideration has made it impossible. In such cases it is obviously inequitable to allow the taxpayer the unjust enrichment which would

result and the refund must then be treated as income in the year of receipt."

To the same effect was the decision in The Louisa Co. v. Commissioner, 1941, 45 B.T.A. 1056, which involved a taxpayer who reported on a cash basis. The rule applied in the Leach case was also accepted by the Court of Claims in Bohemian Breweries, Inc. v. United States, 1939, 27 F. Supp. 588, 89 Ct.Cl. 57. See also Hoboken Land & Improvement Co. v. Commissioner, 3 Cir., 1943, 138 F.2d 104.

This rule, that a tax refund received in a later year must be related back to eliminate a corresponding deduction which had been taken in an earlier year whenever the tax liability for the earlier year is still open for adjustment, was developed and applied by the lower courts without benefit of the blessing of an authoritative decision of the Supreme Court on the point. We must now examine Dixie Pine Products Co. v. Commissioner, 1944, 320 U.S. 516, 64 S. Ct. 364, 88 L.Ed. 420, and Security Flour Mills Co. v. Commissioner, 1944, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725.

In the Dixie Pine case, a taxpayer on the accrual basis accrued certain state excise taxes assessed against it in 1937, and took a deduction for them in that year, although it did not pay such taxes and was in fact then contesting its liability therefor in the state courts. In 1938 it was finally adjudged by a decree in the state court that the excise taxes assessed against it were not legally due. In its federal income tax return for 1938, the taxpayer by way of compensating entry included in gross income the amount of such excise taxes for which deduction had been taken in the earlier year. Nevertheless the Commissioner in reviewing the tax return for 1937 disallowed the deduction and determined a deficiency accordingly. The Board, 45 B.T.A. 286, and the Circuit Court of Appeals, 5 Cir., 134 F.2d 273, upheld the Commissioner, and the Supreme Court affirmed, holding that a taxpayer on an accrual basis cannot accrue, and claim as a deduction, an unpaid tax liability which he is currently engaged in contesting. In such circumstances, the Court said, the taxpayer must await the event of the state court litigation and could claim a deduction only for the taxable year in which its tax liability, if any, was finally adjudicated. The Dixie Pine case is not controlling in the case at bar because here the taxpayers, who are on a cash basis, had actually paid the deficiency taxes in 1942 under compulsion of the Commissioner's deficiency assessment. The original deduction was therefore properly taken, whereas in the Dixie Pine case the deduction which the accrual-basis taxpayer took in the earlier year was improper from the outset, and would still have been so, even if the outcome of the state court litigation had been a determination in 1938 that the excise taxes were legally due. In the latter event the deduction for taxes would have had to be taken in 1938, the year in which the tax liability was finally established.

In Security Flour Mills Co. v. Commissioner, supra, a taxpayer on the accrual basis had in 1935 instituted a suit to enjoin the collection of processing taxes levied under the Agricultural Adjustment Act of 1933, 7 U.S.C.A. § 601 et seq., and had obtained a temporary injunction enjoining further collection of the taxes on condition that, pendente lite, it pay the disputed taxes into a depository. In its return for 1935, the taxpayer deducted from gross income as an accrued tax liability the sum of approximately $100,000, which was t h e amount impounded and accrued but not paid to the Collector in the year 1935. Meanwhile, during 1935, the taxpayer had made sales of flour at prices which included an amount sufficient to cover the processing taxes. In United States v. Butler, 1936, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A. L.R. 914, the Act under which the processing taxes were imposed was held unconstitutional, and later in 1936 the amounts of the impounded taxes were returned to the taxpayer. During 1936, 1937 and 1938 the taxpayer refunded various sums to its customers, totaling $45,000, to reimburse said customers for the amount of the processing taxes which had been included in the sales price of flour sold to them in 1935 and not paid by the seller to the Collector as processing taxes. The Commissioner disallowed the deduction of $100,000 which the taxpayer had taken in 1935 for accrued processing tax liability, and determined a

deficiency for that year accordingly. So far as this deduction was concerned, the case presented a Dixie Pine problem; under the rule applied in that case, the taxpayer on an accrual basis was not entitled to take a deduction for an accrued tax liability while at the same time contesting the validity of the tax. The Board of Tax Appeals so held, Security Flour Mills Co. v. Commissioner, 45 B.T.A. 671. But the Board further held that the refunds aggregating $45,000 which the taxpayer had made to its customers during 1936, 1937 and 1938 amounted to an ordinary and necessary business expense for the maintenance of good will even though the taxpayer was not legally obligated to make such refunds; and that such refunds should be referred back to the taxable year 1935 under the rule which the Board had earlier applied in the Elliott and Leach cases. The Board relied particularly on § 43 of the Revenue Act of 1934, 48 Stat. 694.[1] It was the view of the Board that, since this item of $45,000 had to remain as part of the taxpayer's gross income for 1935 because it was actually received by the taxpayer in that year pursuant to the contracts of sale, with no legal obligation to refund regardless of the outcome of the AAA litigation, it therefore followed that, in order to prevent a distortion of the 1935 income picture, the amounts refunded in later years to purchasers on account of these 1935 transactions should appear as an offsetting deduction against 1935 gross income. The net effect of what the Board did was thus to cut down the amount of the 1935 deficiency which the Commissioner had determined. The Commissioner brought a petition for review, and the Circuit Court of Appeals reversed the Board, holding that the amounts of the refunds in the subsequent years should not be carried back as an offsetting deduction from gross income in 1935, Commissioner of Internal Revenue v. Security Flour Mills Co., 10 Cir., 135 F.2d 165. The court relied upon Burnet v. Sanford & Brooks Co., 1931, 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383, which had emphasized the annual accounting basis of the Revenue Acts.

Security Flour Mills Co. thereupon applied for and obtained certiorari to review the judgment of the Circuit Court of Appeals. As the case was presented to the Supreme Court, there was no longer a question whether the taxpayer was entitled to take as a 1935 deduction the full $100,000 which it had originally accrued in that year as a processing tax liability while making payments thereof into the depository. It had abandoned that position when the case was before the Board, 45 B.T.A. 671 at page 678. All that the taxpayer was asking the Supreme Court to do was to reinstate the deduction of $45,000 which the Board had allowed it to take against 1935 gross income, though the refunds to customers in that amount had been made in later years. The view which had been taken by the Board, as above summarized, was substantially that which the taxpayer-appellants have urged upon us in the present case, namely, that an event or transaction occurring in a later year should be carried back and reflected in the tax computation of an earlier year in which a related transaction had occurred, in order to avoid a distortion of taxable income for the earlier year. This suggested tax accounting method is not an implausible one. As applied to the facts of the case at bar, the argument is: the Commissioner erroneously made a deficiency assessment in 1942 and the taxpayer ought not to have had to pay the deficiency tax, with interest thereon, in that year. In 1943 the Commissioner corrected his error by making refund to the taxpayer. The tax liability for both years being open for adjustment, the true income picture would be more accurately reflected by eliminating the interest deduction taken in the 1942 return and taking the corresponding refund item out of gross income for 1943—thus drawing

[1] "Sec. 43. Period for which deductions and credits taken. The deductions and credits provided for in this title shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period. * * *" Section 43 of the Internal Revenue Code, 26 U.S. C.A. § 43, is the corresponding provision now in effect.

the income pictures for the two years as they would have been had the Commissioner not made his erroneous ruling.

However, the Supreme Court in the Security Flour Mills case rejected the view of the Board of Tax Appeals and upheld the ruling of the Circuit Court of Appeals that the amounts which the taxpayer had refunded to customers in 1936-1938 on account of 1935 sales transactions could not be taken as a deduction against 1935 gross income, which included corresponding amounts as part of the sales price received in that year. Mr. Justice Roberts, speaking for the Court, quoted the following from Burnet v. Sanford & Brooks Co., supra, 282 U.S. 359, at page 363, 51 S.Ct. 150, at page 151, 75 L.Ed. 383: "'All the revenue acts which have been enacted since the adoption of the Sixteenth Amendment have uniformly assessed the tax on the basis of annual returns showing the net result of all the taxpayer's transactions during a fixed accounting period, either the calendar year, or, at the option of the taxpayer, the particular fiscal year which h e m a y adopt.'" [321 U.S. 281, 64 S.Ct. 598] Continuing, the Court said, 321 U.S. at page 286, 64 S.Ct. at page 598, 88 L.Ed. 725:

"The rationale of the system is this: 'It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation.'

"This legal principle has often been stated and applied. The uniform result has been denial both to Government and to taxpayer of the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, or the obligation to pay, has become final and definite in amount."

The Court also said, 321 U.S. at pages 285-286, 64 S.Ct. at page 598, 88 L.Ed. 725, that the provision of § 43 of the Revenue Act of 1934,[2] upon which the Board of Tax Appeals had relied, was inserted only for the limited purpose of taking care of "fixed liabilities payable in fixed installments over a series of years"; so that, for example, "a tenant would not be compelled to accrue, in the first year of a lease, the rental liability covering the entire term nor would he be permitted, if he saw fit to pay all the rent in advance, to deduct the whole payment as an expense of the current year. But we think it was not intended to upset the well-understood and consistently applied doctrine that cash receipts or matured accounts due on the one hand, and cash payments or accrued definite obligations on the other, should not be taken out of the annual accounting system and, for the benefit of the Government or the taxpayer, treated on a basis which is neither a cash basis nor an accrual basis, because so to do would, in a given instance, work a supposedly more equitable result to the Government or to the taxpayer."

We think that the rule of tax accounting applied in the Elliott and Leach cases is no longer tenable in view of the decision in Security Flour Mills Co. v. Commissioner, supra. Shortly after the decision in that case, the Tax Court so estimated its effect in Stanard-Tilton Milling Co. v. Commissioner, 1944, 3 T.C. 1026, 1030. The taxpayers have argued that the Third Circuit, in Cooperstown Corporation v. Commissioner, 1944, 144 F.2d 693, certiorari denied, 1944, 323 U.S. 772, 65 S.Ct. 131, 89 L.Ed. 618, took a narrower view of the effect of the Security Flour Mills decision and, notwithstanding that case, felt free to adhere to the Elliott-Leach rule of tax accounting. We think, however, that the Cooperstown case is narrowly distinguishable on its facts, as the government pointed out in opposing the petition for certiorari. And see Baltimore Transfer Co. v. Commissioner, 1947, 8 T.C. 1, 7. The Third Circuit's view as to the effect of the Security Flour Mills case is clearly apparent from its opinion in Freihofer Baking Co. v. Commissioner, 3 Cir., 1945, 151 F.2d 383, 386, which was decided after the Cooperstown case. The taxpayer in the Freihofer case, who was on the accrual basis, had purchased flour in 1935 at a contract price which had been loaded by the seller in

---

[2] See note 1, supra.

an amount sufficient to cover the seller's liability for processing taxes. The full amount which the taxpayer had charged for the flour was properly deducted by it from gross income in its original corporation income tax return for 1935 as part of the "cost of goods sold". The Agricultural Adjustment Act having been held unconstitutional in 1936, the seller in that year refunded to the taxpayer so much of the purchase price of the flour as covered the amount of the processing taxes which the seller had been relieved from paying. The taxpayer contended that this refund in 1936 had no connection with any 1936 transactions and ought not to be included in gross income for 1936, but rather that it should be carried back to the year 1935 with the effect of reducing the cost of flour for that year, thus increasing the 1935 net income. The Tax Court conceded that the taxpayer's contention would have been well-founded under the rule of the Elliott case, but construed Security Flour Mills Co. v. Commissioner, supra, as having overruled the Elliott case. Therefore the Tax Court ruled that the refund to the taxpayer in 1936 must be taken into gross income for that year. (3 CCH TCM Dec. 14,121) In affirming the Tax Court, the Circuit Court of Appeals for the Third Circuit said, 151 F.2d at page 386: "Undeniably the transactions here in controversy are intrinsically related, but it is evident, too, that petitioner here seeks to accomplish exactly that which the Supreme Court in the Security Flour Mills case, supra, 321 U.S. [281] at page 287, 64 S.Ct. [596] at page 599, 88 L.Ed. 725, refused to permit, that is, report income, 'not of a given year, but, in the light of ultimate gain, from a series of transactions over a period of years, growing out of, or in some way related to, an initial transaction in the taxable year.'"

█ If we are right thus far, in the proposition that ordinarily it is not permissible to expunge a tax deduction properly taken in an earlier year because of the receipt by the taxpayer of a tax refund in a later year, the fact that the two years now in question happen to be 1942 and 1943 does not call for a different result. The taxpayers are in error in their suggestion that the effect of the Current Tax Payment Act of 1943 was to telescope the years 1942 and 1943 into a single accounting period. That Act prescribed that the total 1943 tax of these taxpayers should consist of two distinct components: (1) the 1943 tax as ordinarily computed, and (2) 25 per cent of the 1942 tax as ordinarily computed. It is clear from the terms of the Act that the tax liabilities for 1942 and 1943 must first be computed separately without reference to the special provisions of the Current Tax Payment Act; and then that Act operates in effect to forgive 75 per cent of the lesser liability. The tax for each year must be computed in accordance with the usual rules for determining liability for the particular tax accounting period.

The judgments of the District Court are affirmed.