Charles Sumner BIRD, Plaintiff, Appellant,

v.

UNITED STATES of America, Defendant, Appellee.

No. 5134.

United States Court of Appeals First Circuit.

March 6, 1957.

Edward C. Thayer, Boston, Mass., with whom E. Barton Chapin, Boston, Mass., was on brief, for appellant.

Charles B. E. Freeman, Atty., Dept. of Justice, Washington, D. C., with whom Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, Washington, D. C., Anthony Julian, U. S. Atty., and Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., were on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

The taxpayer filed a complaint in the district court seeking to recover an alleged overpayment of income tax for the taxable year 1944. From a judgment by the district court dismissing the complaint, this appeal was taken. The factual background of the case, as well as the basic issue involved, is essentially the same as that in Bartlett v. Delaney, 1 Cir., 1949, 173 F.2d 535, certiorari denied 1949, 338 U.S. 817, 70 S.Ct. 59, 94 L.Ed. 495.

Appellant keeps his books on a cash receipts basis. In 1937, as a shareholder in Bird & Son, Inc., a Massachusetts corporation, he received a distribution of certain shares of preferred stock in that corporation, but he reported no income with respect to that transaction in his tax return for that year. In 1940 the Commissioner of Internal Revenue, having ruled that the receipt of the preferred stock constituted a taxable dividend, determined that there was a deficiency in income tax for 1937 in the amount of $167,648.89, most of which deficiency was attributable to the receipt of the aforesaid preferred stock.

The taxpayer filed with the Board of Tax Appeals a petition for redetermination of the asserted deficiency for 1937. In a companion case, Bass v. Commissioner, 45 B.T.A. 1117, presenting similar issues and arising in connection with the same distribution of preferred stock, the Board of Tax Appeals sustained a parallel deficiency, as applied to another stockholder, in December, 1941. To stop the running of interest, the present taxpayer in February, 1942, paid the sum of the asserted deficiency plus interest thereon in the amount of $39,165.54, of which $37,878.45 was the portion of interest paid applicable to the asserted deficiency based on the value of the shares of said preferred stock. In June, 1942, this court reversed the decision of the Board of Tax Appeals in the Bass case, 1 Cir., 129 F.2d 300. The government did not apply for certiorari, so that our decision in the Bass case became final in September of 1942.

Relying upon our holding in Bass v. Commissioner to the effect that the distribution of the preferred stock in 1937 did not constitute a taxable dividend, the Tax Court on September 30, 1943, entered its decision that the present taxpayer, Charles Sumner Bird, had made in 1942 an overpayment of $162,139.47 in connection with his income tax for the year 1937. As a result, the taxpayer received in 1944 a refund of the said deficiency, including the aforesaid item of interest in the sum of $37,878.45.

Meanwhile, in his federal income tax return for 1943, which return also included his income for 1942 (pursuant to the Current Tax Payment Act of 1943, 57 Stat. 126, 26 U.S.C.A. Int.Rev.Acts), the taxpayer claimed a deduction of $37,878.45 as interest paid in 1942 on the asserted deficiency for 1937. In his return for 1944 the taxpayer did not include in his reported income this item of interest which had been refunded to him in that year. Instead he attached a statement to his 1944 return, reporting receipt of the interest item of $37,878.45, and offering to execute a waiver extending the collection period for the year 1942. In other words, rather than pay an income tax for the year 1944 on this item of refunded interest, the taxpayer deemed it to be to his advantage to expunge the deduction which he had taken in his original return for 1942, on account of interest paid in that year, thus augmenting somewhat his taxable income for 1942. The taxpayer chose to assert this position because of the so-called tax forgiveness provision of the Current Tax Payment Act of 1943.

In March, 1948, within the extended collection period for the year 1942, the taxpayer filed an amended return eliminating the item of $37,878.45 originally claimed as a deduction as interest paid in 1942. In consequence of the elimination of this deduction, the taxpayer in his amended return reported an increase of $5,889.88 in tax liability for the year 1942 over the amount reported in his original return. A check for $5,889.88 accompanied the amended return. This check was received by the Collector of Internal Revenue for Boston and was later cashed. It need hardly be said that this action by the Collector in accepting the amended return and in cashing the accompanying check did not tie the government's hands and estop the government from making a later audit of the original and amended returns. See Burnet v. Porter, 1931, 283 U.S. 230, 51 S. Ct. 416, 75 L.Ed. 996.

In January, 1950, upon audit of the taxpayer's returns for the years 1942 through 1945, the Commissioner rejected the amended return for 1942, in which the taxpayer had sought to expunge the interest deduction in the amount of $37,878.45 and thus to show an increase of tax liability for the year 1942. The Commissioner also determined that there had been a small overassessment in the sum of $1,768.40 for the year 1943, and he further determined that there was a deficiency in income tax for the year 1944 in the amount of $43,012.71. The Commissioner having credited this overassessment against the deficiency, the taxpayer in July, 1950, paid the remainder of the asserted deficiency for 1944, with interest.

In March, 1952, the taxpayer filed a claim for refund of the amount of the deficiency for the year 1944 collected from him as a result of the Commissioner's inclusion in his income for that year of the interest item of $37,878.45 refunded to him. The Commissioner disallowed the claim for refund on November 15, 1954. Acting in due time, the taxpayer filed this complaint in April, 1955. As above stated, the district court dismissed the complaint, sustaining the Commissioner's contention that the interest actually paid in 1942 was properly deductible in that year, while the refund of such interest received in 1944 was includible in gross income for the latter year. D.C., 141 F.Supp. 569.

The relevant statutes follow:

Section 23 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23 states

with respect to deductions from gross income that,

"In computing net income there shall be allowed as deductions: * * *

"(b) *Interest.* All interest paid or accrued within the taxable year on indebtedness * * *."

Section 41 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 41 states the general rule that "The net income shall be computed upon the basis of the taxpayer's annual accounting period * * *."

Section 42 of the Internal Revenue Code of 1939, as amended by § 114 of the Revenue Act of 1941, c. 412, 55 Stat. 697, 26 U.S.C.A. § 42 (stipulating the period in which items of gross income shall be included) provides:

"(a) *General rule.* The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer * * *."

Coupled with the foregoing statutory provision is the direction in § 43 of the Internal Revenue Code of 1939, 26 U.S. C.A. § 43 (stating the period for which deductions and credits shall be taken) which reads in part as follows:

"The deductions and credits * * * shall be taken for the taxable year in which 'paid or accrued' or 'paid or incurred', dependent upon the method of accounting upon the basis of which the net income is computed, unless in order to clearly reflect the income the deductions or credits should be taken as of a different period."

We are in accord with the opinion of the district court that our decision in Bartlett v. Delaney, supra, governs the present case. With the hope of distinguishing Bartlett v. Delaney, the taxpayer now points out (1) that he, unlike Bartlett, never reported as income the interest item refunded to him in the later year (1944) in his income tax return for that year, and (2) that he, also unlike Bartlett, filed an amended return for the earlier tax year deleting the deduction originally taken for that year and paying the resulting increase in tax liability. In our view these factual deviations from Bartlett v. Delaney fall within the category of distinctions involving no real difference. Bartlett v. Delaney, it must be borne in mind, was based on the pronouncement by the Supreme Court that

" 'It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation.' " Security Flour Mills Co. v. Commissioner of Internal Revenue, 1944, 321 U.S. 281, 286, 64 S.Ct. 596, 598, 88 L.Ed. 725.

See Bartlett v. Delaney, supra, 173 F.2d at page 540.

Because both distinctions urged upon us by the present taxpayer—his refusal to report the refunded interest as income for the year 1944, and the filing of an amended return for the taxable year 1942—took place after the close of the taxable year 1942, they cannot be allowed to impair our former conclusion, which we now reiterate, that such subsequent acts should so far as possible be irrelevant to tax liability.

■■■ Nor can we accept the taxpayer's contention that the interest deduction actually taken in the original return for 1942 was unauthorized, and therefore subject to later correction, because it was established before he filed his return for that year that the asserted deficiency for the taxable year 1937 was erroneous, entitling him to a refund of the deficiency paid in February, 1942. This contention is not quite accurate. It is true that our decision in Bass v. Commissioner had become final in September, 1942, upon failure of the government to apply for certiorari within the time allowed. But the decision in the Bass case was not res judicata in

parallel cases brought by other taxpayers. It was not until September 30, 1943, that the Tax Court decided that the present taxpayer, Bird, had made in 1942 an overpayment of $162,139.47 in connection with an asserted deficiency for the year 1937. The Commissioner could have brought this decision of September 30, 1943, for review before this court, and though we no doubt would have followed our ruling in Bass v. Commissioner, the Supreme Court would have been free to grant a writ of certiorari in the Bird case and to reach a decision contrary to our conclusion in Bass v. Commissioner. In fact, however, the government did not seek review of the Tax Court's decision of September 30, 1943, and thus that decision became "final" at the end of 1943. Not until then could it be truthfully said that it had become irrevocably established that the taxpayer was entitled to a refund of the deficiency tax which he had paid in February of 1942.

The deduction for interest paid, as taken in the original return for 1942, was properly taken because the interest payment was actually made in that year pursuant to an adverse decision of the Board of Tax Appeals and to stop the further running of interest. That is the essence of the cash basis system: tax significance is accorded to the passage of cash, and cash passed in 1942. If as a result the taxpayer may be deemed to have faced a certain dilemma, he could have avoided this dilemma, as was pointed out by Judge Wyzanski in Bartlett v. Delaney, D.C.D.Mass.1948, 75 F.Supp. 490, 496, had he chosen to refrain from taking a deduction in his original tax return for 1942, and instead to wait for the refund that he was confident would follow very shortly. But once having taken the deduction in the year of payment, as did the taxpayer in the instant case, the other alternative was forever foreclosed and a later amendment of the tax return for that year was ineffective to eliminate the deduction.

In further support of his claim for refund, the taxpayer says that the 1944 repayment constituted a "recovery exclusion" within the meaning of § 22 (b) (12), 26 U.S.C.A. § 22(b) (12)* on the alleged ground that the amount taken as an interest deduction for the year 1942 did not result in a reduction of his income tax for that year. This new theory was not advanced or considered in Bartlett v. Delaney, supra; nor was it presented to or considered by the district court in the present case.

■■ Ordinarily we would not reverse a judgment of the district court on a ground not urged upon it or considered. See Robinson & Co. v. Belt, 1902, 187 U.S. 41, 50, 23 S.Ct. 16, 47 L.Ed. 65; Note, "Raising New Issues on Appeal," 64 Harv.L.Rev. 652, 654–55 (1951). This is not necessarily so in "exceptional cases or particular circumstances * * * where injustice might otherwise result," as stated in Hormel

---

* "(b) Exclusions from gross income.— The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

　　*　　*　　*　　*　　*

"(12) Recovery of bad debts, prior taxes, and delinquency amounts. Income attributable to the recovery during the taxable year of a bad debt, prior tax, or delinquency amount, to the extent of the amount of the recovery exclusion with respect to such debt, tax, or amount. For the purposes of this paragraph:

　　*　　*　　*　　*　　*

"(B) Definition of prior tax. The term 'prior tax' means a tax on account of which a deduction or credit was allowed for a prior taxable year.

　　*　　*　　*　　*　　*

"(D) Definition of recovery exclusion. The term 'recovery exclusion', with respect to a bad debt, prior tax, or delinquency amount, means the amount, determined in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, of the deductions or credits allowed, on account of such bad debt, prior tax, or delinquency amount, which did not result in a reduction of the taxpayer's tax under this chapter (not including the tax under section 102) or corresponding provisions of prior revenue laws, reduced by the amount excludible in previous taxable years with respect to such debt, tax, or amount under this paragraph. * * *"

v. Helvering, 1941, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037. But we do not think that the present is such an exceptional case. If the taxpayer had made this "recovery exclusion" argument an issue in the district court, we assume the government could have introduced evidence tending to defeat its applicability by showing that the taxpayer received some tax benefit from claiming the original interest deduction in his return for 1942. In fact, so far as the present record contains any factual indication on the point, it rather tends to show that there is no basis for the taxpayer's belated argument. The stipulation by the parties filed March 13, 1956, recites that when the taxpayer filed his amended return for the year 1942, expunging the deduction originally taken on account of interest paid, this resulted in an additional tax liability in the amount of $5,889.88, for which he tendered his check. No reason has been advanced, and none has occurred to us, which would lead to the conclusion that the entirely proper taking of the original interest deduction did not result in some lessening of the tax liability for 1942.

A judgment will be entered affirming the judgment of the District Court.