RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0083p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DENZELL RUSSELL,

*Defendant-Appellant*.

No. 20-3756

On Petition for Rehearing En Banc.
United States District Court for the Northern District of Ohio at Cleveland;
No. 1:19-cr-00786-2—James S. Gwin, District Judge.

Decided and Filed:  April 26, 2022

Before:  McKEAGUE, NALBANDIAN, and MURPHY, Circuit Judges.

_____

**COUNSEL**

**ON PETITION FOR REHEARING EN BANC:**  Catherine Adinaro Shusky, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant.

The court issued an order.  BUSH, J. (pp. 3–9), delivered a separate statement respecting the denial of the petition for rehearing en banc.

_____

**ORDER**

_____

The court received a petition for rehearing en banc. The original panel has reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision of the case. The petition then was circulated to the full court. No judge has requested a vote on the suggestion for rehearing en banc.

Therefore, the petition is denied.

---

### STATEMENT

---

BUSH, Circuit Judge, statement respecting the denial of rehearing en banc.

Some criminals "go free because the constable has blundered." *Mapp v. Ohio*, 367 U.S. 643, 659 (1961) (quoting *People v. Defore*, 150 N.E. 585, 587 (N.Y. 1926) (Cardozo, J.)). But what happens when the constable's lawyer blunders?

The panel was presented with that rare question here: Denzel Russell moved to suppress evidence gathered in the search of a car in which he was a passenger. Because he did not own the car or have a legitimate expectation of privacy in it as a passenger, caselaw is clear that he cannot bring a Fourth Amendment challenge to the search—he lacked what courts call Fourth Amendment standing. *See Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978). But the government did not make that argument below; instead, the district court raised it sua sponte as an alternative reason to deny Russell's motion.

The government then asked the panel here to affirm the denial of the suppression motion solely on the district court's standing theory—the very same ground the government had forfeited below. That request is understandable. We have twice held in published decisions that we can correct the government's forfeited error on appeal under Federal Rule of Criminal Procedure 52(b), which says that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b).

We did so first in the sentencing context. *See United States v. Barajas-Nunez*, 91 F.3d 826 (6th Cir. 1996). In *Barajas-Nunez*, a district court relied on improper factors to support a downward departure of 49 months, and the government failed to object. *Id.* at 830, 833. Instead, the government raised its objection for the first time in its opening appellate brief. *Id.* at 829, 830. We concluded that the objection was forfeited, but we reviewed for plain error under Rule 52(b), citing *United States v. Olano*, 507 U.S. 725, 731 (1993). *Id.* at 830. And we reversed, finding that the "extraordinary downward departure" affected the substantial rights of the government and

people of the United States to have a defendant sentenced "in accordance with the legal principles of the sentencing guidelines." *Id.* at 833.

Judge Siler dissented from that holding. He noted the well-established definition of "substantial rights" when Rule 52(b) was promulgated, which focused on *preventing* prejudice to the defendant. That focus was in serious tension with the *Barajas-Nunez* majority's finding of plain error for the government's benefit, which would ultimately *cause* prejudice to the defendant. *Id.* at 835–36 (Siler, J., concurring in part and dissenting in part). As Judge Siler saw it, the government's forfeited objections should be resuscitated only when the law changes while an appeal is pending. *Id.* Yet the majority declined to "assume that either the *Olano* Court or the drafters of [Rule 52(b)] intended that only defendants and never the government should be able to demonstrate that a plain error affected substantial rights." *Id.* at 833; *see also United States v. Jackson*, 207 F.3d 910, 923 (7th Cir. 2000) (Wood, J., concurring in part and dissenting in part) (citing *Barajas-Nunez* as a possible rare case when a plain error "might" have "a serious effect on the fairness, integrity, or public reputation of judicial proceedings").

The *Barajas-Nunez* majority's reasons for giving the government the benefit of Rule 52(b) were twofold. First, the text itself makes "no distinction between the government and defendants." *Barajas-Nunez*, 91 F.3d at 833. But perhaps more importantly, the *Barajas-Nunez* majority concluded that the government has a right to secure a correct sentence. *Id.* Or as a sister circuit put it, the government has a "right to seek justice on behalf of the accuser, and society, in a criminal case," and that right could be substantially affected when a sentence is erroneously low. *United States v. Dickerson*, 381 F.3d 251, 257 (3d Cir. 2004). So at least for plain *sentencing* errors, we held that the government can raise objections for the first time on appeal. *Barajas-Nunez*, 91 F.3d at 833. And it eventually became the "majority view" that the government can seek plain-error review of a forfeited sentencing objection. *See Dickerson*, 381 F.3d at 257 (collecting cases).

We considered the issue next in *United States v. Noble*, 762 F.3d 509 (6th Cir. 2014), which extended *Barajas-Nunez* beyond the sentencing context. That case also involved whether a defendant had Fourth Amendment standing. *Id.* at 526. As here, he lacked standing to challenge the search. *Id.* Also, as here, the government missed its chance to make that argument at the

district court. *Id.* at 526–27. But it also failed to raise the argument in its opening brief on appeal, so we held (and the government admitted) that it had "waived" the issue. *Id.* at 527, 528.

That holding first required us to determine that the government even *could* waive its argument that the defendant lacks Fourth Amendment standing. Because "Fourth Amendment standing is akin to an element of a claim and does not sound in Article III," we held that waiver was possible. *Id.* at 527 (citing *Rakas*, 439 U.S. at 139).

We next decided "how to treat" that waiver. *Id.* at 527–28. Rather than adopt a bright-line rule—either that the standing issue is always waived when the government fails to raise it or that it can always be raised on appeal because the defendant bears the burden to prove standing—we looked to the plain-error rule. *Id.* (citing *Barajas-Nunez*, 91 F.3d at 830). Failure to raise this standing argument at the district court was a forfeiture, so "we would allow the government to raise" it on appeal if it could "show that the defendant plainly lacked standing and that our failure to recognize it would seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 528 (cleaned up). But because the government failed to raise the issue in its opening brief on appeal, we held the objection waived. *Id.*

Now, "pick[ing] up where *Noble* left off[,]" we reaffirm here that the government's forfeited standing arguments are reviewable under the plain-error standard. *Russell*, 26 F.4th at 375. We have disclaimed concern that Russell cannot adequately respond to the government's new argument; for "he has the burden of proving standing in the first place." *Id.* And as to the plain-error inquiry, we conclude that Russell plainly lacks standing, that a suppression-induced dismissal of the government's case against Russell would affect the government's substantial rights, and that allowing Russell to benefit from the exclusionary rule would "lead to a rightfully diminished view of the judicial proceeding." *Id.* at 377–79. So we affirm the district court. *Id.* at 379.

The panel admits that "plain error is an odd fit here." *Id.* at 376. Looking at how the Supreme Court interpreted Rule 52(b) in *Olano* makes it easy to see why. That case spells out four basic requirements for plain-error review. First, the appellate court must find error, which occurs when "a legal rule was violated during the district court proceedings" and "the *defendant*

did not waive the rule." *Olano*, 507 U.S. at 733–34 (emphasis added). That error must be plain— "clear under current law." *Id.* at 734. Further, to prove that the error affected substantial rights, "the defendant must make a specific showing of prejudice." *Id.* at 735. Finally, "Rule 52(b) is permissive, not mandatory," because courts generally notice forfeited errors when "the life, or as in this case the liberty, of the defendant is at stake[.]" *Id.* at 735–36 (citing *Sykes v. United States*, 204 F. 909, 913–14 (8th Cir. 1913)). That discretion can be exercised when an error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 736 (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

By applying *Olano*'s defendant-centric requirements to the government's forfeited errors, courts have forced a square peg into a round hole. Doing so required concluding that the drafters of Rule 52(b) made no distinction between the government and defendants when it came to substantial rights. *See, e.g.*, *Barajas-Nunez*, 91 F.3d at 334; *Russell*, 26 F.4th at 378 (citing *Barajas-Nunez* for the proposition that the government has a substantial right to Russell's punishment). But "'substantial rights,' as described in *Olano*, are those rights of the defendant at bar[.]" *Barajas-Nunez*, 91 F.3d at 836 (Siler, J., concurring in part and dissenting in part); *Jackson*, 207 F.3d at 923 (Wood, J., concurring in part and dissenting in part) ("Assistant U.S. Attorneys do not serve prison time as a result of error."). So, in my view, we should reconsider our answer to whether the drafters of Rule 52(b) intended for defendants and the government alike to invoke the plain-error rule.

We could start by asking what the drafters thought they were doing. They called Rule 52(b) "a restatement of existing law." Fed. R. Crim. P. 52, 1944 Advisory Committee on Rules notes. Likewise, one member of the advisory committee contemporaneously said that the rule simply "states the doctrine of plain error." Wendell Berge, *Proposed Federal Rules of Criminal Procedure*, 42 Mich. L. Rev. 353, 381 (1943). Outside observers agreed. Judge John B. Sanborn of the Eighth Circuit—the author of the *Sykes* case cited in *Olano*, *see* 507 U.S. at 735–36—opined in the public-comment period that the proposed rule was "substantially a correct statement of the

law and the prevailing practice." 2 *Drafting History of the Federal Rules of Criminal Procedure* 274 (Madeline J. Wilken & Nicholas Triffin eds., 1991).[1]

So what was that established law and practice?

The plain-error doctrine was meant to "relieve the harshness" of the default rule that when a party fails to raise an issue before a district court, an appeals court will not consider it. Advisory Committee on Rules of Criminal Procedure, *Federal Rules of Criminal Procedure: Preliminary Draft with Notes and Forms* 198 (1943) (citing *Robinson & Co. v. Belt*, 187 U.S. 41, 50 (1902)); *accord Olano*, 507 U.S. at 731 (noting that although "[n]o procedural principle is more familiar to this Court than that a constitutional right, or a right of any other sort, may be forfeited" when not raised to a district court, Rule 52(b) grants "a limited power to correct errors that were forfeited" (cleaned up)). If a plain error was "committed in a manner so absolutely vital to defendants," the Supreme Court found itself "at liberty to correct it." *Wiborg v. United States*, 163 U.S. 632, 658 (1896); *accord Clyatt v. United States*, 197 U.S. 207, 221–22 (1905). A 1909 decision explained the basics of the doctrine:

> In criminal cases courts are not inclined to be as exacting with reference to the specific character of the objection made as in civil cases. They will, in the exercise of a sound discretion, sometimes notice error in the trial of a criminal case, although the question was not properly raised at the trial by objection and exception.

*Crawford v. United States*, 212 U.S. 183, 194 (1909);[2] *see also Weems v. United States*, 217 U.S. 349, 362 (1910) (holding that the forfeiture rule "is not a rigid one" and expressing "less reluctance

---

[1]One contemporary did argue that the rule "enlarge[d] the power of the prosecutor"—but not because it let the government invoke the plain-error doctrine itself. William Scott Stewart, *Federal Rules of Criminal Procedure*, 372–73 (1945). Rather, he thought that the rule made it harder for *defendants* to invoke the doctrine by codifying a narrow reading of the current law and practice. In his view, "an appeal will be futile, unless the upper court is convinced, by such record as a defendant is permitted to make, that" the defendant is innocent, he has not waived his right to complain, and the error is the only reason for his conviction. *Id.*

[2]Writing fifteen years after the *Crawford* decision, one commentator stated that the plain-error rule "is predicated upon the doctrine that where life or liberty of citizens is at stake and gross errors are made which are seriously prejudicial and result in the miscarriage of justice, the appellate court will consider questions vital to the defendant not raised and properly preserved by objection, exception, request or assignment of error." Elijah N. Zoline, *Federal Appellate Jurisdiction and Procedure, with Forms*, § 124 at 75–76 (2d ed. 1924).

to act under it when rights are asserted which are of such high character as to find expression and sanction in the Constitution or Bill of Rights").**3**

Maybe the most oft-cited description of the plain-error doctrine was *United States v. Atkinson*, which held that "[i]n exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." 297 U.S. at 160 (citing *N.Y. Cent. R.R. Co. v. Johnson*, 279 U.S. 310, 318 (1929) (correcting plain error where "paramount considerations are involved"); *Brasfield v. United States*, 272 U.S. 448, 450 (1926) ("The failure of petitioners' counsel to particularize an exception to the court's inquiry does not preclude this court from correcting the error. This is especially the case where the error . . . affects the proper relations of the court to the jury, and cannot be effectively remedied by modification of the judge's charge after the harm has been done." (citations omitted)).

Conspicuously absent from this summary of "existing law" is any case in which an appellate court stepped in to protect *the government* from the consequences of its errors. Likely because, as the above sources reveal, "[i]t is the special deprivation of liberty resulting from a criminal sentence that justifies relieving a defendant of the consequences of a forfeited objection." *Jackson*, 207 F.3d at 923 (Wood, J., concurring in part and dissenting in part); *accord Olano*, 507 U.S. at 735–36. But "no such deprivation occurs for the government," *id.*, so I resist how easily our court and others have allowed the government to invoke its own substantial right to a successful prosecution. Neither Rule 52(b) itself nor the Supreme Court opinions interpreting it seem to embrace that conclusion.

Perhaps a final comment in closing most clearly evokes how far our interpretation of Rule 52(b) has strayed from what was apparently its original meaning. While the proposed federal

---

**3**Defining the "rights" protected by the plain-error rule as tantamount to those protected by the Constitution or Bill of Rights is revealing. Those rights are held by individuals and asserted against the government—not held by the government to be asserted against individuals. When courts developed the plain-error doctrine, it seems clear that *individual* rights were front of mind. So it seems equally clear that, as Judge Siler put it, the substantial rights protected by the plain-error rule belong to individual defendants in individual cases. *Barajas-Nunez*, 91 F.3d at 836 (Siler, J., concurring in part and dissenting in part).

criminal rules were being considered in 1943, U.S. Attorney for Colorado Thomas J. Morrissey defined a "plain error" as "those errors which the appellate court laboriously digs out of the record when the appellate court thinks the case should be reversed, even though the attorney for the appellant failed to find them." 3 *Drafting History of the Federal Rules of Criminal Procedure* 540 (Madeline J. Wilken & Nicholas Triffin eds., 1991). Morrissey was frustrated, it seems, that the Rule would advantage defendants by codifying a one-sided mechanism for the reversal of convictions hard-won by the government. Yet that was the price Rule 52(b) accepted for preventing defendants from languishing in prison for obvious errors their counsel failed to raise.

Eighty years later, we have reconfigured Rule 52(b) in a way that Morrissey might have preferred, but that he recognized the Rule itself did not codify. In the appropriate case, we should ask whether that reconfiguration was the right one and reconsider the *Barajas-Nunez* line of authority.

ENTERED BY ORDER OF THE COURT

_____

Deborah S. Hunt, Clerk